UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TRACEY GRIMES, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | }   Case No.: 5:13-CV-470-MHH |
| | } |
| CAROLYN W. COLVIN, Acting | } |
| Commissioner of the Social Security | } |
| Administration, | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Tracey Grimes brings this action pursuant to Title II of Section § 205(g) of the Social Security Act. Ms. Grimes seeks review of the decision by the Commissioner of the Social Security Administration denying her claims for a period of disability and disability insurance benefits. *See* 42 U.S.C. § 405(g). After careful review, the Court finds that the ALJ's decision is due to be remanded.

## STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND

On June 24, 2009, Ms. Grimes filed a Title II application for a period of disability and disability insurance benefits. She asserted that she became disabled on April 23, 2009. (R. 104).[1]  The Social Security Administration denied her

---

[1] Ms. Grimes filed a prior application for a period of disability and disability insurance benefits on November 27, 2006. An ALJ denied Ms. Grimes's 2006 claim, and the Appeals Council

2

claim on February 4, 2010. (R. 20, 107). Thereafter, Ms. Grimes filed a written request for a hearing. She appeared and testified at a video hearing on June 7, 2011. (R. 51-103; 112). Ms. Melissa Neel, a vocational expert, and Mr. Douglas Friedman, an attorney for the claimant, appeared at the hearing. (R. 51). At the time of her hearing, Ms. Grimes was 49 years old.[2] Ms. Grimes has a high school education and is able to communicate in English. (R. 33). Her past relevant work experience is as a nurse assistant, inspector, dogcatcher, store laborer/stocker, and nursery school attendant. (R. 33).

On September 1, 2011, the ALJ denied Ms. Grimes's request for disability benefits, concluding that Ms. Grimes did not have an impairment or a combination of impairments listed in or medically equal to one listed in, 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 35). The ALJ applied the Social Security Administration's "five-step sequential evaluation process for determining if an individual is disabled," noting that "the evaluation would not go on to the next step" if "it is determined that the claimant is or is not disabled at a step of the evaluation process." (R. 21).

---

denied Ms. Grimes's request for review on September 29, 2009. Mr. Grimes did not appeal the Commissioner's decision. (R. 20).

[2] At 49 years of age, 20 C.F.R. § 404.1563 designates Ms. Grimes as a "younger person," which means, generally, her age will not be considered to seriously affect her ability to adjust to other work. 20 C.F.R. § 404.1563(c). However, in some circumstances, "persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. *Id.* (citing Rule 201.17).

The ALJ found that Ms. Grimes had not "engaged in substantial gainful activity since April 23, 2009, the alleged onset date." (R. 22).[3] The ALJ also found that Ms. Grimes has the following severe impairments: "history of thrombotic thrombocytopenic pepura (TTP), visual limitations, depression, and anxiety." (R. 23). The ALJ stated that these impairments "cause more than a minimal limitation in the claimant's ability to perform basic work activities." (R. 23). The ALJ determined that Ms. Grimes's obesity "has not in combination with [her] other impairments impacted on [her] musculoskeletal system or general health as to cause [Ms. Grime's] treating doctors to diagnose her with impairments, secondary to obesity or impairments in combination with obesity." (R. 23).

Based on the factual findings, the ALJ concluded that Ms. Grimes had the "residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). (R. 28). The judge opined,

> [Ms. Grimes] can occasionally lift and/or carry, to include upward pulling, up to 20 pounds, and frequently lift and/or carry to include upward pulling, up to 10 pounds . . . can stand and/or walk, with normal breaks, for a total of about 6 hours in an 8-hour workday, and sit, with normal breaks, for a total of about 6 hours in an 8-hour workday. There are no limitations on the claimant's upper extremities for gross or fine handling, or in the lower extremities for the operation of foot controls. The claimant should not climb ramps, stairs, ropes, or scaffolds. Claimant can frequently balance, stoop, kneel, and crouch, and she cannot work around hazardous machinery and unprotected

---

[3] The ALJ's findings are consistent with Ms. Grimes' medical records. Throughout this opinion, there are citations to both the ALJ's decision and to supporting documents such as medical records.

4

heights. The claimant can understand and remember simple instructions and simple work procedures, but not detailed instructions. The claimant can concentrate for an 8-hour workday in 2-hour increments, with regular breaks, and she should have her own workstation. The claimant should work for an hourly pay with only occasional contact with the general public and any changes to the work environment should be infrequent and gradually introduced. The claimant cannot perform any travel jobs or commercial driving.

(R. 28, 1355–1362).

In reaching his conclusion, the ALJ gave great weight to the State Agency medical consultants' opinions regarding Ms. Grimes's physical and mental limitations. The ALJ relied especially on the August 2009 assessment of consultative examiner Dr. Rao R. Nadella. (R. 31–33). Dr. Nadella indicated clear bilateral retinas of normal color, contour, and cupping. The ALJ also gave considerable weight to Dr. Thomas W. Tenbrunsel's 2009 assessment. (R. 33). Dr. Tenbrunsel noted that Ms. Grimes was able to respond to long and short-term memory problems, recognize familiar objects and name them, and write, but she had difficulty reading due to vision problems. (R. 30, 1294). Dr. Tenbrunsel opined that Ms. Grimes's depression and anxiety would not preclude her from maintaining employment, understanding, remembering, and carrying out instructions, and responding appropriately to supervisors and coworkers. (R. 30, 1295). Dr. Tenbrunsel also diagnosed Ms. Grimes with "Major Depressive Disorder, Recurrent, Severe, without Psychotic Features . . . Anxiety

5

Spells . . . [and] Cognitive Disorder (difficulties with memory, finishing thoughts, concentration, confusion, possibly result of strokes)." (R. 1294).

The ALJ gave some weight as well to an assessment in 2009 by Dr. Carol Walker, a neuropsychologist. (R. 33). Dr. Walker administered to Ms. Grimes the Wechsler Memory Scale-III examination, which revealed that Ms. Grimes's immediate memory index and her general memory index were both in the low average range. (R. 30; 1299). Dr. Walker noted that when Ms. Grimes was presented with spoken information, her ability to learn or recall material presented within the context of brief stories was in the low average range immediately after presentation and average range following a delay. (R. 30, 1299). Overall, Dr. Walker opined, "[Ms. Grimes's] presentation suggested she had better functioning of the left hemisphere than of the right and her overall testing suggested she functioned adequately for day-to-day functioning." (R. 26, 1300).

The ALJ gave little weight to the opinion of Ms. Grimes's treating physician, Dr. Marshall Schreeder. (R. 32). The ALJ determined that "Dr. Schreeder's opinion indicating that [Ms. Grimes's] impairments have resulted in numerous limitations in her ability to function lacks clinical support and it is contradicted by his own evaluations of [Ms. Grimes]." (R. 32). Dr. Schreeder's records "consistently show" that Ms. Grimes was "'doing well,' that she had no new symptomatology, and her impairments were controlled." When Dr. Schreeder

saw Ms. Grimes in November 2010, "she was instructed to return to see him in one year for a routine follow-up visit." (R. 30, 704–714).

Although the ALJ only discussed the weight he have to the opinions of Dr. Nadella, Dr. Tenbrunsel, Dr. Walker, and Dr. Schreeder, the ALJ also received treatment records from various physicians who conducted physical and psychological examinations of Ms. Grimes, most notably Dr. Amy Cooper, a mental residual functional capacity (RFC) examiner; Dr. Robert Heilpern, a physical RFC examiner; Dr. Jenny Chapman, an examining physician; and Drs. Kenneth Winton and Steve Sullins, both optometrists. (R. 306, 1326, 1334, 1341).

Dr. Cooper's mental RFC Assessment indicated that Ms. Grimes was able to understand and remember simple instructions and simple work procedures (but not detailed instructions), concentrate on simple tasks in 2-hour increments, with regular rests and breaks, have only occasional contact with the general public, have infrequent and gradually introduced changes to the work environment, and that she should have her own workstation. Dr. Cooper further noted that Ms. Grimes "would benefit from a flexible schedule as 1-2 days of work may be missed due to mental condition." (R. 1326).

Additionally, Dr. Heilpern's RFC assessment stated that Ms. Grimes could occasionally lift and/or carry, to include upward pulling, up to 20 pounds, frequently lift and/or carry to include upward pulling, up to 10 pounds, stand

and/or walk, with normal breaks, for a total of about 6 hours in an 8-hour workday, and she could sit, with normal breaks, for a total of about 6 hours in an 8-hour workday. (R. 1355–1358). Dr. Heilpern noted that Ms. Grimes had no limitations in using her upper or lower extremities; could frequently balance, stoop, kneel, and crouch; could not climb ramps, stairs, ropes, or scaffolds; could not work around hazardous machinery and unprotected heights; and had no established visual limitations (including near acuity, far acuity, and field of vision). (R. 1355–1358). Dr. Heilpern did find, though, that Ms. Grimes's peripheral vision field is restricted in both eyes. (R. 1358).

Dr. Chapman diagnosed Ms. Grimes with reoccurring migraine headaches (variable from 2 to 4 times a month on average), TTP, and elevated blood pressure. (R. 23, 26, 309).

Dr. Winton's consultative evaluation revealed that "[Ms. Grimes's] distance visual acuity was 20/50 in the right and left eye and with best correction was 20/50 in the right and left eye." (R. 26, 1334). Her diagnoses were visual field restriction defect in each eye, and possible suspect glaucoma in each eye. (R. 26, 1334–35). Dr. Winton suggested that Ms. Grimes should avoid driving and "tasks requiring peripheral awareness, balance, and very fine acuity." (R. 26, 1335). Dr. Sullins similarly found that Ms. Grimes's visual field was very constricted and that she had "very poor peripheral vision." (R. 26, 1342).

Ultimately, the ALJ found that Ms. Grimes was not capable of performing past relevant work because the past jobs of nurse assistant, inspector, and dog catcher were "medium in exertional requirements and semi-skilled," the past job of store laborer/stocker was "medium in exertional requirements and unskilled, and the past job of nursery school attendant was "light in exertional requirements and semiskilled." (R. 33). All of these occupations exceed Ms. Grimes's current residual functional capacity. (R. 33). However, the ALJ, after considering Ms. Grimes's age, education, work experience, and RFC, concluded that jobs exist in significant numbers in the national economy and in Alabama that Ms. Grimes can perform. (R. 34, 75–76). This determination was based on the testimony of Ms. Neel, a vocational expert, who testified that Ms. Grimes would be able to perform the requirements of representative occupations such as:

> [S]ome inspector[4] jobs that are light and unskilled . . . [with] approximately 4,000 such jobs in Alabama and 110,000 in the U.S. . . . [S]ome cleaner jobs . . . [with] approximately 4,000 such jobs in Alabama and 250,000 in the U.S. . . . [S]ome packer jobs . . . [with] approximately 1,000 such jobs in Alabama and 40,000 in the U.S.

(R. 76). Consequently, the ALJ determined that Ms. Grimes is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 34). The ALJ found that Ms. Grimes is "not disabled" under sections 216(i) and 223(d) of the Social Security Act. (R. 34).

---

[4] This inspector job differs from the inspector job performed by Ms. Grimes in her past work experience by requiring only light work and no skills. (R. 76).

9

On January 10, 2013, this became the final decision of the Commissioner when the Appeals Council refused to review the ALJ's decision. (R. 1). Before the Appeals Council refused to review the ALJ's decision, Ms. Grimes's attorney, Mr. Friedman, submitted a narrative by Dr. Schreeder designed to contextualize his medical records concerning Ms. Grimes. (R. 1379). The narrative is included in the record. The Appeals Council reviewed the narrative and found that it did "not provide a basis for changing the Administrative Law Judge's decision." (R. 1–2). Having exhausted all administrative remedies, Ms. Grimes filed this action for judicial review pursuant to § 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

## ANALYSIS

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and

medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Here, in assessing whether Ms. Grimes is disabled, the ALJ found that Ms. Grimes's "history of thrombotic thrombocytopenic pepura (TTP), visual limitations, depression, and anxiety" were "severe impairments" that cause more than a minimal limitation on her ability to perform basic work activities." (R. 23). Nevertheless, the ALJ concluded that Ms. Grimes is not disabled because she is capable of successfully adjusting to other work that exists in significant numbers in the national economy. (R. 34). The ALJ based his decision on Dr. Amy Cooper's mental RFC Assessment, Dr. Robert Heilpern's physical RFC Assessment, and testimony from the vocational expert, Ms. Neel, that a person of Ms. Grimes's age, education, work experience, and residual functional capacity would be capable of performing work as an inspector, cleaner, or packer. (R. 34, 76, 1336, 1355–1358).

11

Ms. Grimes argues that she is entitled to relief from the ALJ's decision because the ALJ committed reversible error "by failing to properly evaluate the opinions of Ms. Grimes's treating physician, Dr. Marshall Schreeder" and by failing to include her (Ms. Grimes's) visual limitation in the RFC determination and the hypothetical questions posed to the vocational expert (VE) (Pl.'s Br. at 1, 13). The Court finds Ms. Grimes's second argument persuasive. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1545(a)). By definition, a severe impairment limits significantly a claimant's ability to do basic work activities. Therefore, all severe impairment limitations must be incorporated into the ALJ's RFC finding. *Raduc v. Comm'r of Soc. Sec.*, 380 Fed Appx. 896, 898 (11th Cir. 2010). Here, the ALJ found that Ms. Grimes had visual limitations that constituted a severe impairment and caused more than a "minimal limitation in the claimant's ability to perform basic work activities." (R. 23). Therefore, the ALJ should have incorporated Ms. Grimes's visual limitations into his RFC.

In making his RFC determination, the ALJ reviewed the medical examinations of Dr. Nadella, Dr. Winston, Dr. Sullins, and Dr. Heilpern. (R. 29–31). These examiners offered conflicting findings regarding Ms. Grimes's visual

limitations. Based upon these opinions, the ALJ posed questions to the VE who testified that the cleaner job would not be available to a person without peripheral vision; the packer job would require near acuity at the constant level; and the inspector job would require frequent near acuity. (R. 79–80). The VE stated, "If they're not able to [have near acuity] at least frequently or constantly, no, [these jobs] would not be available." (R. 80).

The ALJ concluded that Ms. Grimes's RFC would permit her to work as a cleaner, packer, or inspector. Therefore, the ALJ implicitly rejected the opinions of those physicians whose findings contradicted those of Dr. Heilpern, who found that Ms. Grimes had no established visual limitations. In fact, the ALJ stated that he assigned "great weight to the assessments given by the State Agency medical consultants." (R. 31). However, the ALJ failed to state with particularity the weight he gave to the remaining opinions concerning Ms. Grimes's visual limitations and the reasons for doing so. (R. 31). At the RFC stage, an ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion," but an ALJ must "state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Dr. Heilpern opined that Ms. Grimes's peripheral vision is restricted in both eyes. (R. 1358). Dr. Winton opined that Ms. Grimes has restricted peripheral vision, and she is limited with respect to tasks requiring "peripheral awareness, balance or fine acuity." (R. 1334). Dr. Winton also found that Ms. Grimes has a visual acuity of 20/50 in both eyes without glasses and with best correction. (R. 1334). Dr. Nadella opined that Ms. Grimes's visual acuity is 20/30 on the right, and 20/40 on the left. (R. 1289). The ALJ considered all of this evidence, but he did not state with particularity the weight assigned to these conflicting medical opinions concerning Ms. Grimes's vision. Therefore, the Court cannot determine whether substantial evidence supports the ALJ's RFC finding and cannot evaluate whether the ALJ's RFC finding can be reconciled with the VE's opinion that certain visual impairments may limit Ms. Grimes's ability to perform the jobs for which the ALJ found her qualified. *See Winchel*, 631 F.3d at 1179 ("It is possible that the ALJ considered and rejected [the conflicting opinions regarding Ms. Grimes's visual limitations], but without clearly articulated grounds for such a rejection, [the Court] cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.").

The Commissioner argues that the ALJ properly included Ms. Grimes's visual limitations in the RFC assessment when he "determined Plaintiff's visual limitations resulted in an RFC to do light work, with no climbing ramps, stairs,

ropes, or scaffolds, no working around hazardous machinery or unprotected heights, and no travel jobs or commercial driving." (Def.'s Br. at 20). The Commissioner further states that the "ALJ's decision shows these limitations were based on a thorough review of the record evidence, including the visual findings in Dr. Schreeder's exam records and consultative exams from Dr. Nadella, Kenneth R. Winton, O.D., and Steve Sullins, O.D." (*Id.*).

The Commissioner also argues that an ALJ is not required to include in hypothetical questions references to a claimant's diagnoses or impairments; the ALJ need only include the claimant's functional limitations. (Def.'s Br. at 19). Although an ALJ need not include in a hypothetical findings that he has properly rejected as unsupported, as discussed above, the Court cannot determine whether substantial evidence supports the ALJ's apparent rejection of the conflicting evidence regarding Ms. Grimes's visual limitations. Thus, remand is warranted. *Compare Manzo v. Comm'r of Soc. Sec.*, 408 Fed. Appx. 265, 268 (11th Cir. 2011) ("The ALJ did not need to include [the claimant's] claimed visual limitations in the hypothetical question because . . . substantial evidence supported the ALJ's rejection of these claimed limitations during the relevant time period.") *with Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 834 (11th Cir. 2011) ("Without an explanation of the weight accorded by the ALJ, it is impossible for a

reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.").

## CONCLUSION

For the reasons stated above, the Court **REMANDS** this matter under sentence four of 42 U.S.C. § 405(g) with instructions to the ALJ to fully evaluate, consider, and explain the weight given to each of the medical opinions concerning Ms. Grimes's visual limitations; to incorporate all physical limitations into hypothetical questions posed to a vocational expert and into RFC findings; and to conduct any additional proceedings consistent with this opinion.

**DONE** and **ORDERED** this September 19, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE